UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| SHEILA BROWN, | : |
| Plaintiff, | : |
| | : |
| -v- | : |
| | : |
| CITY OF NEW YORK, NYC DEPT. OF SOCIAL | : |
| SERVICES–HUMAN RESOURCES ADMIN., | : |
| Defendants. | : |
| | : |

------------------------------------------------------------------------X

14 Civ. 2668 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Sheila Brown, proceeding *pro se*, brings claims of employment discrimination

against the City of New York ("City") and the Human Resources Administration, Department of

Social Services ("HRA") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et

seq.* ("Title VII"), New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*

("NYSHRL"), and New York City Human Rights Law, N.Y. City Admin. Code §§ 8–101 *et seq.*

("NYCHRL"). Brown alleges that she was denied a pay increase because of her gender and was

subjected to disciplinary actions in retaliation for her participation in protected activity.

Defendants now move to dismiss Brown's Amended Complaint in its entirety. For the following

reasons, the Court grants the motion.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/23/14

# I.      Background

## A.      Factual Background[1]

On March 19, 1990, Brown was hired as an HRA Caseworker.  Pl. Br. Supp. 1.  In March 1999, she was promoted to Supervisor I Social Services (Welfare) based on the results of a civil service examination.  *Id.*  In May 2001, she laterally transferred to the Adult Protective Services unit but retained the same title.  *Id.*  Brown has held that position ever since.  *See id.* at 1–3.

In September 2001, Brown enrolled in a Master of Social Work ("MSW") program at the State University of New York ("SUNY") Stony Brook.  *Id.* at 1.  By December 2003, Brown completed the requirements for her MSW.  Am. Compl. 6.  Brown thereafter contacted the HRA Personnel Department to request a pay increase.  Pl. Br. Supp. 1.  According to HRA policy, "[w]hen an employee receives Social Work degree-MSW after civil service appointment, the head of the employee's agency has [the] authority to request HRA-Personnel Dept. for Social Work Differential pay."  *Id.* at 1.  The base salary for Brown's current position, Supervisor I Social Work, is $49,765.  Am. Compl. 5.  With a MSW, the rate of pay for that position can increase to $55,119.  *Id.*  With a MSW and a promotion to Supervisor II Social Work, the rate of pay can increase to $64,424.  *Id.*  In spring 2004, Brown gave the Personnel Department a copy of her transcript, which confirmed that she had completed the requirements for a MSW.  Pl. Br.

---

[1] These facts are drawn, in part, from the Amended Complaint.  *See* Dkt. 17 ("Am. Compl."), 16 ("Am. Compl. Supp.").  For the purpose of resolving the motion to dismiss, the Court assumes all well-pled facts to be true and draws all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Solely as a source of explanatory background and context, the Court also includes factual allegations contained in letters and affirmations Brown filed.  Dkt. 25 ("Pl. Br."), 26 ("Pl. Br. Supp."), 30 ("Motion to Amend").  However, the Court does not rely on such allegations in resolving the motion to dismiss, because "it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *Weir v. City of New York*, No. 05 Civ. 9268 (DFE), 2008 WL 3363129, at *9 (S.D.N.Y. Aug. 11, 2008) (citation omitted).  In any event, these allegations, even if considered for this purpose, would not have altered the Court's analysis or outcome.

Supp. 2.  Brown also informed Jerry Victor, the Director of the Adult Protective Services unit, that he needed to contact the Personnel Department regarding the pay differential.  *Id.*  Victor responded that "he doesn't have Social Workers in his unit" and that Brown would "have to go somewhere else to work."  *Id.*  Brown was in fact the only employee with a social work degree in her unit.  *Id.*

Despite these efforts, Brown never received her social work differential pay.  Am. Compl. 3, 6; Am. Compl. Supp. 1.  On June 27, 2014, however, Brown received notice that she had been placed in a "pre-selective hiring pool" for a promotion to Supervisor II Social Work.  Am. Compl. 6.  On July 3, 2014, Brown interviewed for a position at a Home Care Agency in Long Island City, a three-hour commute from her home.  Pl. Br. 2.  Adult Protective Services "was a no show at the promotional pool."  *Id.*  Brown was not selected for the promotion, but she put her name back on the list, and her "list number is 7."  *Id.*

On two occasions, Victor disciplined Brown.  Am. Compl. 6.  First, on April 2, 2012, Victor gave Brown an "unsatisfactory evaluation performance."  *Id.*  Second, on June 25, 2014, Brown received notice that she was required to appear at "OATH [Office of Administrative Trials and Hearings] court for disciplinary action" on July 8, 2014.  *Id.*  The date of the OATH hearing was later moved to September 9, 2014.  Pl. Br. 2.  Following the OATH hearing, Brown was suspended from her employment for 10 days.  Motion to Amend 1–2.  Because of this suspension and Victor's recommendations, Brown is currently ineligible for a promotion and corresponding salary increase.  *Id.*  In addition to these two incidents, Brown alleges that Victor has generally been "harassing/discriminating" toward her.  Am. Compl. 6.

### B.      Brown's Prior Lawsuit Against the City and HRA[2]

On April 29, 2011, Brown, through counsel, filed her first lawsuit against the City and

HRA.[3]  *See Brown v. The City of New York et al.* ("*Brown I*"), No. 11 Civ. 2915, at Dkt. 1

("*Brown I* Compl.").  She alleged that she had been subjected to a hostile work environment and

retaliated against for opposing the defendants' unlawful employment practices, in violation of

Title VII and parallel state and city laws.  *Id.*

*Brown I* centered on the bizarre and inappropriate behavior of Brown's former

subordinate, George Miller.  Brown's Complaint alleged that Miller had been "aggressive

---

[2] In resolving the motion to dismiss, the Court also considered Exhibits A, B, C, E, and F attached to the Declaration of Michael F. Fleming in Support of Defendant's Motion to Dismiss. Dkt. 20.  All are public records previously filed with the EEOC or with this Court in connection with Brown's first lawsuit against the City and HRA.  "[I]t is 'well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).'" *Burfeindt v. Postupack*, 509 F. App'x 65, 67 (2d Cir. 2013) (summary order) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).  This includes charges filed with the EEOC.  *See, e.g.*, *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 121 (S.D.N.Y. 2012), *aff'd* 556 F. App'x 56 (2d Cir. 2014) (summary order).

The Court did not, however, consider Exhibit D, which consists of excerpts of Brown's deposition testimony taken in Brown's first lawsuit. Although "the court may take judicial notice of decisions and filings in related litigation between the parties without converting the motion [to dismiss] to a motion for summary judgment," *Riddick v. Arnone*, No. 11 Civ. 631 (SRU), 2012 WL 2716355, at *2 (D. Conn. July 9, 2012) (citing *Staehr v. Hartford Financial Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008)), Brown's deposition testimony was not admitted into evidence during the previous litigation and is not part of the public record. Defendants are undoubtedly correct that Brown was aware of her prior testimony when she drafted the Amended Complaint.  But "mere notice or possession" of documents does not suffice; "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  Nothing in the Amended Complaint indicates that Brown relied on her deposition testimony in drafting her pleadings. And for the reasons set out in this opinion, Brown's Amended Complaint is deficient even without recourse to the deposition testimony.  The Court therefore declined to consider it.

[3] Brown's case was originally assigned to Judge Swain but was reassigned to this Court on October 13, 2011.  *Brown I*, Dkt. 14.

towards women," *id.* ¶ 16, and "had exhibited serious harassing behavior towards women," *id.* ¶ 17.  Miller refused to take orders from Brown because of her gender, *id.* ¶ 20, and touched her hands without her consent several times, *id.* ¶¶ 22, 23, 36.  He also sexually harassed Brown's female co-workers by staring at them in a sexual manner, *id.* ¶¶ 22, 26, 27, 28, grabbing and touching them, *id.* ¶¶ 45, 47, and, on at least two occasions, exposing himself at the office, *id.* ¶¶ 48–51.  Brown's Complaint further alleged that Miller had made Brown feel unsafe and discriminated against by "frequently danc[ing] in the hallways," "rap[ping] loud lyrics [about] gun shots," "us[ing] profane language," and "screaming out of the blue."  *Id.* ¶¶ 37–40. Although Brown repeatedly advised Victor, her direct supervisor, of Miller's behavior and her resulting discomfort, Victor, Brown alleged, never reprimanded or disciplined Miller.  *See id.* ¶¶ 16, 19, 21, 22, 25, 28, 29, 41.  Brown eventually complained to the Human Resources Department, which also failed to investigate Miller's behavior.  *Id.* ¶ 44.

During the same period, Brown alleged, she faced multiple disciplinary actions.  On May 21, 2009, Victor told Brown that she "was a terrible manager and that she had to leave the unit." *Id.* ¶ 30.  On June 22, 2010, Brown was formally reprimanded for failing to enter Miller's time and allowing him to attend to personal business during work hours.  *Id.* ¶ 55.  In late 2010 or early 2011, Brown was formally reprimanded and referred to the Employee Disciplinary Unit for refusing to take over the caseload of a caseworker who was on extended sick leave.  *Id.* ¶¶ 56– 58.  Meanwhile, Brown was not given an opportunity to apply for a particular promotion, and the position was ultimately given to a male caseworker.  *Id.* ¶ 31.  Brown alleged that these actions were all taken in retaliation for her complaints about Miller.  *See id.* ¶¶ 30, 31, 57, 70.

On February 21, 2013, defendants moved for summary judgment on all claims.  Dkt. 36. After briefing and argument, Dkt. 36–49, the Court denied summary judgment on the hostile

work environment claims but granted it as to the retaliation claims.  Dkt. 51.  Explaining the

latter ruling, the Court held that Brown had not established any of the elements of a prima facie

case of retaliation under Title VII—"(1) that she participated in a protected activity; (2) that

participation in the protected activity was known to the employer; (3) that the employer

thereafter subjected her to a materially adverse employment action; and (4) that there was a

causal connection between the protected activity and the adverse employment action."  *Brown v.

City of New York*, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *14 (S.D.N.Y. July 19, 2013)

(citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010)).  Brown had not suffered

an adverse employment action because her official reprimands had not triggered any negative

consequences, *id.* at *15–16, nor had she come forward with evidence on which a jury could

infer that the reprimands were motivated by her complaints about Miller, *id.* at *15–18.  For

much the same reasons, the Court granted summary judgment for the City and HRA on Brown's

retaliation claims brought under state and city laws.  *Id.* at *19–20.

Between December 9 and 11, 2013, a jury trial was held before this Court on Brown's

hostile work environment claims.  *See* Dkt. 77–82.  Brown was represented by counsel.  Brown

testified at trial, as did Victor and other co-workers of Brown's.  The jury returned a verdict for

the defendants.  *See* Dkt. 81.  Brown did not file an appeal or any post-trial motions.

C.      **Brown's Current Lawsuit**

On March 25, 2014, Brown filed a charge with the EEOC alleging that HRA had

discriminated against her because of her gender and had retaliated against her because of her

participation in a protected activity, to wit, her complaints of discrimination.  Am. Compl. 3, 10.

On April 1, 2014, the EEOC issued a Notice of Dismissal and Right to Sue.  *Id.* at 4, 10.  The

Notice did not make any factual findings as to defendants' conduct.  *See id.* at 10.

On April 15, 2014, Brown, proceeding *pro se*, filed the Complaint in this case.  Dkt. 2.
On June 30, 2014, defendants filed a motion to dismiss.  Dkt. 10–12.  On July 22, 2014, Brown
filed an Amended Complaint, Dkt. 17, and an "affirmation in opposition to motion," Dkt. 16.
Pursuant to the Court's Order of July 24, 2014, the Court considers these documents together as
the Amended Complaint.  Dkt. 18.  The Amended Complaint does not identify specific causes of
action.  It consists instead of a form with various checkboxes and short-answer lines, and a brief
timeline describing Brown's experiences at HRA.  Liberally construed,[4] however, the Complaint
can be read to allege two distinct courses of conduct that are potentially actionable under Title
VII and parallel state and city laws: that defendants (1) denied Brown a pay increase because of
her gender, and (2) took disciplinary actions against Brown in retaliation for her complaints of
discrimination.

On August 12, 2014, defendants filed a motion to dismiss the Amended Complaint
pursuant to Federal Rule of Civil Procedure 12(b)(6), along with a supporting memorandum of
law and declaration.  Dkt. 19, 22 ("Def. Br."), 20 ("Def. Decl.").  On August 25, 2014, Brown
filed another "affirmation in opposition to motion," Dkt. 25, and a letter containing additional
factual allegations, Dkt. 26.  The Court construes these two documents as Brown's opposition to
the motion to dismiss.  On September 16, 2014, defendants submitted their reply.  Dkt. 29.  On
October 9, 2014, Brown filed a "supplemental complaint" describing the outcome of the OATH
hearing.  Dkt. 30.  The Court construes this document as a motion for leave to further amend the
Amended Complaint.  On October 17, 2014, defendants filed a response to that motion.  Dkt. 31.

---

[4] The Court is obligated to construe *pro se* complaints "'to raise the strongest arguments that they
suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed.
Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006)).

**II.      Discussion**

Defendants move to dismiss the Amended Complaint on two grounds.  First, defendants argue that Brown's claims are barred by res judicata.  Second, defendants contend that the Amended Complaint fails to state a claim upon which relief can be granted.  The Court addresses each argument in turn.

**A.      Res Judicata**

Under the doctrine of res judicata, also known as claim preclusion, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'"  *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)) (emphasis omitted).  Res judicata bars a subsequent action when three conditions are met: "'(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'"  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)) (alteration in the original).  To determine whether a claim could have been raised in a prior action, courts consider "'whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first.'"  *Id.* (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).

Here, the first two elements are clearly satisfied:  First, *Brown I* was decided on the merits through a grant of summary judgment and a jury verdict.  *See Kremer v. N.Y. State Ins. Dep't*, No. 06 Civ. 9949 (RLC), 2009 WL 777721, at *4 (S.D.N.Y. Mar. 25, 2009) ("Summary

judgment constitutes a final judgment on the merits for purposes of applying res judicata.")
(citation omitted); *Robinson v. Allstate*, 706 F. Supp. 2d 320, 324 (W.D.N.Y. 2010) *aff'd* 508 F.
App'x 7 (2d Cir. 2013) (a jury verdict is a final judgment on the merits for res judicata purposes).
Second, Brown filed both cases against the same two defendants—the City and HRA.  *See Fried
v. LVI Servs., Inc.*, 557 F. App'x 61, 62 (2d Cir. 2014) (summary order).

The decisive issue is therefore whether the claims asserted in Brown's Amended
Complaint "were, or could have been, raised in the prior action."  *TechnoMarine, Inc.*, 758 F.3d
at 499.  In resolving this issue, the timeline is crucial, because "[c]laim preclusion does not bar
claims, even between identical parties, that arise after the commencement of the prior action."
*Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 919 (2d Cir. 2010) (citing *Storey v. Cello
Holdings, LLC*, 347 F.3d 370, 383 (2d Cir. 2003)).  Where "'the facts that have accumulated
after the first action are enough on their own to sustain the second action,'" the second action is
not barred by res judicata.  *TechnoMarine*, 758 F.3d at 500 (quoting *Storey*, 347 F.3d at 384).

As to Brown's retaliation claims, Brown claimed in both *Brown I* and this case that HRA
retaliated against her because of her participation in protected activity.  However, *Brown I*
commenced in April 2011, whereas her retaliation claims here involve incidents alleged to have
occurred in April 2012 and at various times in 2014.  *See* Am. Compl. 6.  Although both
retaliation claims involve the same "course of conduct," res judicata "cannot be given the effect
of extinguishing claims which did not even then exist and which could not possibly have been
sued upon in the previous case."  *TechnoMarine*, 758 F.3d at 499 (quoting *Lawlor v. Nat'l
Screen Serv. Corp.*, 349 U.S. 322, 327–28 (1955)).  Final judgment on the merits of Brown's
claim alleging retaliation between 2009 and 2011 therefore does not bar Brown's claims here, at
least to the extent that she alleges incidents of retaliation in 2012 and 2014, postdating the

complaint in *Brown I*.  *See SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996)

("The claim that First Jersey defrauded customers in the sale, purchase, and repurchase of certain

securities in 1975–1979 is not the same as the claim that First Jersey defrauded customers in the

sale, purchase, and repurchase of other securities in 1982–1985."); *see also TechnoMarine*, 758

F.3d at 500 (collecting cases).[5]

     Brown's current pay discrimination claim, by contrast, could have been raised in *Brown*

*I*.  The Amended Complaint alleges that Brown completed her MSW, and thereby became

eligible for Social Work Differential pay, in December 2003.  Am. Compl. 6.  Between the end

of 2003 and the spring of 2004, Brown contacted the HRA Personnel Department to request a

pay increase, provided the Personnel Department with her transcript, and asked her supervisor to

contact the Personnel Department about the pay raise.  Pl. Br. Supp. 1–2.  Accordingly, all of the

facts relevant to Brown's pay discrimination claim had arisen a full seven years before she filed

the complaint in *Brown I*.

     It is no answer to note that *Brown I* centered on a hostile work environment claim,

whereas this action primarily alleges pay discrimination.  Both suits arise out of the same "series

of transactions," *TechnoMarine*, 758 F.3d at 499, to wit, the course of Brown's employment at

HRA and her interactions with a small group of supervisors and co-workers.  *See, e.g.*, *Tompkins*

*v. Local 32BJ, SEIU*, No. 09 Civ. 8466 (SHS) (RLE), 2011 WL 797706, at *4 (S.D.N.Y. Mar. 7,

---

[5] Defendants argue that Brown should have amended her Complaint in *Brown I* to include the
alleged retaliatory incident that occurred in April 2012, several months before defendants filed
their motion for summary judgment in *Brown I*.  *See* Def. Br. 11.  However, even assuming
*arguendo* that the Court would have granted leave to amend, Brown was not required to amend
her pleading mid-litigation.  *See TechnoMarine*, 758 F.3d at 500; *Proctor v. LeClaire*, 715 F.3d
402, 412 (2d Cir. 2013).  In resolving whether res judicata bars a claim, "'[t]he crucial date is the
date the complaint was filed.'"  *Legnani v. Alitalia Linee Aeree Italiane, S.p.A.*, 400 F.3d 139,
141 (2d Cir. 2005) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000)).

2011) (treating plaintiff's course of employment as a "series of transactions").  And the same, or

virtually the same, evidence is relevant to both claims.  *See TechnoMarine*, 758 F.3d at 499.  The

Complaint in *Brown I* alleged, for example, that Brown's supervisor had "disguised" a job

vacancy and hired a male without giving Brown an opportunity to apply, made scheduling

accommodations for male employees but not female employees, and generally "favored male

employees over female employees."  *Brown I* Compl. ¶¶ 31, 32, 54.  These facts, if proven,

would all have supplied valuable circumstantial evidence supporting Brown's sex discrimination

claim in the present case.

Indeed, underscoring the interlocking relationship between the claims, Brown cited

HRA's refusal to increase her pay as evidence of discrimination and retaliation in the EEOC

charge filed as an administrative prerequisite to *Brown I*.  Brown there alleged: "I was

discriminated against by my current employer on the basis of my sex because I am not receiving

Social Worker (MSW) level pay."[6]  Def. Decl. Ex. A, at 1.  The "underlying facts" of *Brown I*

and this case are thus "related in time, space, origin, [and] motivation."  *TechnoMarine*, 758 F.3d

at 499 (quoting *Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001)) (internal quotation marks

omitted).  Brown could have raised her pay discrimination claim in *Brown I*, and that claim is

---

[6] Based on this EEOC charge, defendants argue that the pay discrimination claim not only "could
have been raised in the prior action," but in fact *was* raised in *Brown I*.  *Cf. Shabazz v. Commc'ns
Workers of Am./Texas State Emps. Union*, No. 02 Civ. 2698 (BF), 2005 WL 17658, at *2 (N.D.
Tex. Jan. 3, 2005) (finding all claims raised in plaintiff's EEOC charges barred by res judicata
even though plaintiff raised only some of those claims in the following litigation).  Courts in this
Circuit have not decided whether res judicata attaches to claims raised in EEOC charges but not
included in follow-on civil litigation.  Because the Court concludes that the pay discrimination
claim "could have been raised in the prior action" and is barred on that ground, it need not reach
this issue.

now barred by res judicata.[7]

### B.     Failure to State a Claim

#### 1.        Applicable Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed, where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although a district court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet "is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678.

*Pro se* complaints "'must be construed liberally.'" *Sykes*, 723 F.3d at 403 (quoting *Triestman,* 470 F.3d at 474). Courts may not, however, read into *pro se* submissions claims inconsistent with the *pro se* litigant's allegations, *see Phillips v. Girdich*, 408 F.3d 124, 127–28 (2d Cir. 2005), or arguments that the submissions themselves do not "suggest," *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (citation omitted). *Pro se* status "does not exempt a party from

---

[7] Defendants separately argue that Brown's claims are barred by collateral estoppel, also known as issue preclusion. That doctrine applies when an issue was "actually and necessarily determined" in a prior litigation. *Montana v. United States*, 440 U.S. 147, 153 (1979); *see also Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (enumerating the elements of collateral estoppel). Collateral estoppel does not apply here, however, because the facts underlying Brown's retaliation claim arose after *Brown I* was filed, and Brown's claim of pay discrimination was not resolved by the Court or jury in *Brown I*.

compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).

### 2.    Pay Discrimination

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–2(a)(1). When there is no direct evidence of discrimination, claims under Title VII are guided by the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  411 U.S. at 802.  To do so, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012).  "This burden is not a heavy one."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).  However, a plaintiff cannot establish a prima facie case based on "purely conclusory allegations of discrimination, absent any concrete particulars."  *Tanvir v. N.Y. City Health & Hosps. Corp.*, 480 F. App'x 620, 622 (2d Cir. 2012) (summary order) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

If the plaintiff can establish a prima facie case, "the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action."  *Raspardo v. Carlone*, No. 12 Civ. 1686, 2014 WL 4958157, at *24 (2d Cir. Oct. 6, 2014).  "If the employer is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination."  *United States v. City of New York*, 717 F.3d 72,

102 (2d Cir. 2013).  A plaintiff "is not required to prove the prohibited motivation was the sole

or even the principal factor in the decision, or that the employer's proffered reasons played no

role in the employment decision."  *Finn v. N.Y. State Office of Mental Health Rockland*

*Psychiatric Ctr.*, No. 08 Civ. 5142 (VB), 2011 WL 4639827, at *11 (S.D.N.Y. Oct.6, 2011)

(citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001)).  Rather, the plaintiff must

show that her "protected status contributed to the employer's decision."  *Id.*

Sex discrimination "'claims brought under [NYSHRL] are analytically identical to claims

brought under Title VII.'"  *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10

(2d Cir. 2011) (quoting *Torres v. Pisano,* 116 F.3d 625, 629 n.1 (2d Cir.1997)).  However,

NYCHRL provides broader protections than its federal and state counterparts, so "courts must

analyze NYCHRL claims separately and independently from any federal and state law claims."

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

Here, Brown has adequately pled the first three elements of a prima facie Title VII case

by alleging that she (1) is a member of a protected class—women, (2) qualified for a pay

increase by earning her MSW, and (3) did not receive a pay increase or promotion.  *See, e.g.*,

*Magilton v. Tocco*, 379 F. Supp. 2d 495, 503 (S.D.N.Y. 2005) ("[D]enial of a raise qualifies as

an adverse employment action.").

However, the Amended Complaint does not contain factual allegations that support the

fourth element—an inference of discrimination.  Brown does not, for example, allege that

similarly situated men received Social Work Differential pay.  *See Raspardo*, 2014 WL 4958157,

at *25 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)) (plaintiff can raise

an inference of discrimination by "show[ing] that the employer treated him or her 'less favorably

than a similarly situated employee' outside of the protected group").  Nor does Brown allege that

her supervisor made statements that could be construed as sexist in the context of denying her pay raise.  *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 252–53 (2d Cir. 2014) (supervisor's statements that plaintiff "did not fit in" with other employees could support an inference of race discrimination in supervisor's pattern of assigning work).

Quite the contrary, Brown's submissions suggest a legitimate, non-discriminatory reason for HRA's refusal to give her a raise:  Brown's supervisor stated that "he doesn't have Social Workers in his unit" and that Brown would "have to go somewhere else to work" to obtain the Social Work Differential pay.  Pl. Br. Supp. 2.  Brown was in fact the only employee with a MSW in her unit.  *Id.*  Based on Brown's briefing, there is only one reasonable inference:  HRA declined to increase Brown's pay because employees in her unit are not entitled to Social Work Differential pay.  The contrary inference, that her static pay resulted from gender discrimination, lacks a factual basis.  It could be arrived at only by speculation.

Because the Amended Complaint contains no factual allegations that "giv[e] rise to an inference of discrimination," *Bucalo*, 691 F.3d at 129, Brown has failed to establish the fourth element of her prima facie case under Title VII and NYSHRL.[8]  The Amended Complaint therefore does not contain sufficient allegations to state a claim of sex discrimination, and so the claim must be dismissed.  *See Twombly*, 550 U.S. at 558.

---

[8] Federal district courts have supplemental jurisdiction over state-law claims "that are so related to" federal claims "that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  However, such jurisdiction is "discretionary," *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c).  Because "courts must analyze NYCHRL claims separately and independently" from Title VII and NYSHRL claims, *Mihalik*, 715 F.3d at 109, the Court declines to exercise supplemental jurisdiction over Brown's NYCHRL claims.

>        3.        **Retaliation**

In reviewing retaliation claims, courts also follow the "familiar burden-shifting framework" of *McDonnell Douglas*. *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). To establish a prima facie case of unlawful retaliation, a plaintiff must show: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). If this initial burden is met, "a presumption of retaliation arises," and the burden shifts to "the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010). If the employer meets that burden, the plaintiff then bears the "ultimate burden of persuasion" to prove "that she was the subject of illegal discrimination." *Holtz*, 258 F.3d at 81. Courts apply the same standard to retaliation claims brought under Title VII and NYSHRL. *See Rojas*, 660 F.3d at 107 n.10.

Brown assuredly engaged in protected activity when she filed *Brown I* on April 29, 2011, when she filed an EEOC charge on March 25, 2014, and when she made her first *pro se* filing to initiate this lawsuit on April 25, 2014. *See Jute*, 420 F.3d at 171 (filing lawsuits and EEOC charges qualifies as protected activity). The first element of the prima facie case is, therefore, adequately pled. And as to the second element, defendants do not dispute that they were aware of these acts. The second element of a prima facie case is, therefore, also satisfied.

As to the third element, Brown identifies two ostensible adverse employment actions. First, on April 2, 2012, defendants gave her an unsatisfactory evaluation performance. Am. Compl. 6. Second, on June 25, 2014, defendants sent her a notice requiring her to appear for an

"OATH Court" disciplinary hearing.  *Id.*  Neither of these acts meets the governing standard.  An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Sanders v. N.Y. City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citation omitted).  "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities."  *Id.* (citation omitted).  A negative evaluation or official reprimand "may, in some circumstances, constitute adverse employment action," *Lawrence v. Mehlman*, 389 F. App'x 54, 56 (2d Cir. 2010) (summary order) (collecting cases), but only when it "trigger[s] negative consequences to the conditions of employment," *Taylor v. N.Y. City Dep't of Educ.*, No. 11 Civ. 3582 (JG), 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012) (citing *Siddiqi v. N.Y. City Health & Hosps. Corp.*, 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008)).  The Amended Complaint, however, does not allege that Brown's poor performance evaluation or OATH court summons led to any further consequences, let alone ones that altered the conditions of her employment.  She has therefore failed to adequately plead the third element of a prima facie case of retaliation.

    In addition, as to the fourth element, Brown's sole argument is that the purportedly retaliatory acts were taken soon enough after her protected activity to give rise to an inference of retaliation.  "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action."  *Kaytor*, 609 F.3d at 552.  However, a plaintiff who relies solely on temporal proximity must plead that the events were "very close" in time.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted).  "District courts within the Second Circuit have consistently held that the passage of

two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y.2007); *see also Brown I*, 2013 WL 3789091, at *17 (collecting cases).

Here, a full year expired between the filing of *Brown I* and HRA's negative performance evaluation.  Similarly, Brown received notice of the OATH hearing more than two months after she filed this case, and the hearing did not occur until five months after this litigation commenced.  These acts—even if they qualify as adverse actions—are too attenuated from the protected activities to establish a causal link.  *See Brown I*, 2013 WL 3789091, at *17.  Brown's retaliation claims under Title VII and the NYSHRL therefore must be dismissed for this additional reason.  *See Twombly*, 550 U.S. at 558.[9]

## III.    Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend a complaint shall be "freely" given when "justice so requires," although "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Granting leave to amend is "futile" if a revised claim still "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  If the problems with a claim are "substantive" rather than the result of an "inadequately or inartfully pleaded" complaint, an opportunity to replead would be "futile" and "should be denied."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

---

[9] As explained in note 8, *supra*, the Court declines to exercise supplemental jurisdiction over Brown's NYCHRL claims.

Because Brown's pay discrimination claim is barred by res judicata, "better pleading will not cure" the defect, and granting leave to amend would be futile. *Id.* Although Brown's retaliation claim is not similarly precluded, the Court's judgment is that granting leave to amend would also be futile. Brown has already had one opportunity to amend her complaint, *see* Dkt. 16, 17, and presented new factual allegations in her briefs opposing the motion to dismiss, *see* Dkt. 25, 26. None of those submissions cured the substantive deficiencies in Brown's retaliation claim. Moreover, Brown recently sought to amend her pleading to allege that, following the OATH hearing, she faced a 10-day suspension and is now barred from receiving a promotion. *See* Dkt. 30. This proposed amendment adequately alleges an adverse action, curing one defect in her Amended Complaint, but it does not cure the other: there remains no basis to infer a causal connection between Brown's earlier protected activity and her later suspension.[10] And, "[i]n the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile." *In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004); *see also, e.g.*, *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (summary order) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."); *A Star Grp., Inc. v. Manitoba Hydro*, No. 13 Civ. 4501 (PAC), 2014 WL 2933155, at *6 (S.D.N.Y. June 30, 2014) ("[A]llowing [plaintiff] leave to amend its Complaint would be futile because it has not alleged facts that plausibly state a claim.").

---

[10] Notably, the retaliation claims in *Brown I* failed for similar reasons, despite the efforts of Brown's counsel. *Brown I*, 2013 WL 3789091, at *14–18.

## CONCLUSION

For the foregoing reasons, the Amended Complaint is hereby dismissed with prejudice.

The Clerk of Court is directed to terminate all pending motions, and to close this case.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: October 23, 2014
New York, New York