UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
SHEILA BROWN,                                           :
                                   Plaintiff,           :
                                                        :      14 Civ. 2668 (PAE)
              -v-                                       :
                                                        :      OPINION & ORDER
CITY OF NEW YORK, NYC DEP'T OF SOCIAL                   :
SERVICES - HRA,                                         :
                                   Defendants.          :
                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/12/14

PAUL A. ENGELMAYER, District Judge:

On October 23, 2014, the Court dismissed plaintiff Sheila Brown's *pro se* complaint, which alleged sex discrimination and retaliation, with prejudice. Dkt. 32. The Court assumes familiarity with the underlying facts of this case and with the Court's October 23 Opinion and Order. *See Brown v. City of New York*, No. 14 Civ. 2668 (PAE), 2014 WL 5394962 (S.D.N.Y. Oct. 23, 2014). On November 7, 2014, counsel for Sheila Brown filed a notice of appearance, Dkt. 34, and a motion for reconsideration, Dkt. 35, along with a memorandum of law, Dkt. 37 ("Pl. Br.") and a declaration attaching a proposed Second Amended Complaint, Dkt. 36 ("SAC"). The motion seeks leave to file the SAC, thereby reviving Brown's retaliation claim. For the following reasons, the motion is denied.

The standard governing motions for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). Such a motion is "neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y.

2005); *see also Goonan v. Fed. Reserve Bank of N.Y.*, No. 12 Civ. 3859 (JPO), 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5, 2013) ("Simply put, courts do not tolerate such efforts to obtain a second bite at the apple."). Rather, reconsideration is appropriate "only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted). Here, Brown does not identify a change in controlling law, nor does she allege that new evidence has become available. Instead, she argues that the Court must reconsider its previous decision and grant leave to amend to prevent manifest injustice. *See* Pl. Br. 4–8.

To establish a prima facie case of unlawful retaliation, a plaintiff must show: "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). If the plaintiff can establish a prima facie case, "the burden shifts to the defendant employer to provide a legitimate, non-discriminatory reason for the action." *Raspardo v. Carlone*, No. 12 Civ. 1686, 2014 WL 4958157, at *24 (2d Cir. Oct. 6, 2014). "If the employer is able to satisfy that burden, the inquiry then returns to the plaintiff, to demonstrate that the proffered reason is a pretext for discrimination." *United States v. City of New York*, 717 F.3d 72, 102 (2d Cir. 2013).[1]

---

[1] The same standards apply to claims asserted under Title VII and the New York State Human Rights Law. *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011). For the reasons stated in the Court's October 23 Opinion, the Court declines to exercise supplemental jurisdiction over Brown's New York City Human Rights Law claim, which must be analyzed "separately and independently." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

As discussed in the Court's October 23 Opinion, Brown engaged in protected activity when she filed a previous lawsuit in this Court on April 29, 2011; when she filed an EEOC charge on March 25, 2014; and when she made her first *pro se* filing to initiate this lawsuit on April 25, 2014.  *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 171 (2d Cir. 2005).  The proposed SAC adds that the EEOC issued Brown a Notice of Dismissal and Right to Sue on April 1, 2014.  SAC ¶ 14.  And defendants have not disputed that they were aware of Brown's protected activities.  *See* Dkt. 19–22, 28.  Brown has therefore sufficiently alleged the first two elements of the prima facie case of retaliation.

The proposed SAC identifies five potential adverse employment actions.  For each, Brown bases her claim of a causal connection between her protected activity and the alleged adverse action—the fourth element of the prima facie case—on the ostensible temporal proximity of these events.  "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor*, 609 F.3d at 552.  However, a plaintiff who relies solely on temporal proximity must plead that the events were "very close" in time.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citation omitted); *see also, e.g.*, *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").  "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d

3

257, 275 (S.D.N.Y. 2007); *see also Brown v. City of New York*, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *17 (S.D.N.Y. July 19, 2013) (collecting cases).[2]

The Court considers each of Brown's allegations in turn. First, Brown alleges that, at some point in 2004, her supervisor declined to contact the Personnel Department about increasing Brown's pay. SAC ¶¶ 10–11, 21. This purportedly retaliatory action occurred several years before Brown first engaged in protected activity. It therefore cannot give rise to an inference of retaliation. *See Wilcox v. Cornell Univ.*, 986 F. Supp. 2d 281 (S.D.N.Y. 2013) ("Because this adverse action took place before Plaintiff engaged in any protected activity, she cannot establish a causal link between her termination and her complaints.").

Second, Brown alleges that her supervisor gave her an unsatisfactory performance evaluation on April 2, 2012. SAC ¶ 15; *see also* Pl. Br. 2; Dkt. 17 ("FAC"), at 6. The new allegations in the proposed SAC strengthen Brown's contention that the negative performance evaluation qualifies as a materially adverse action, potentially curing one defect in Brown's First Amended Complaint.[3] *See* SAC ¶ 15. However, the SAC has not remedied the other defect in

---

[2] The authority cited in Brown's memorandum is not to the contrary. *See* Pl. Br. 7–8. Each case involved allegedly retaliatory actions taken within one month of the plaintiff's protected activity. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 435, 446–47 (2d Cir. 1999) (adverse actions occurred in the same month as protected activity); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (adverse actions occurred 10 days after protected activity); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (plaintiffs alleged hundreds of retaliatory actions throughout the year and a half following the protected activities). Moreover, each of these cases predated the Supreme Court's decision in *Clark County School District v. Breeden*, which approvingly cited cases that found three- and four-month gaps insufficient to give rise to an inference of retaliation. *See* 532 U.S. at 273. This calls into question any dicta suggesting that a lengthier gap could still support such an inference.

[3] Whether the proposed SAC in fact adequately alleges that the performance evaluation was a materially adverse action is far from clear. It alleges that the unsatisfactory evaluation precluded Brown from receiving a promotion or transfer. SAC ¶ 15. This allegation is, however, seemingly contradicted by the allegation, which is made three paragraphs later, that Brown was thereafter considered for a promotion. SAC ¶ 18.

Brown's First Amended Complaint—the lack of a causal connection.  To establish temporal proximity between the alleged adverse action and Brown's protected activity, Brown's counsel inexplicably states that April 2, 2012, the date of the unfavorable evaluation, came *after* April 1, 2014, the date the EEOC issued Brown a Notice of Dismissal and Right to Sue.  *See* Pl. Br. 2.  In fact, that assertion is the lynchpin of Brown's motion for reconsideration.  *See* Pl. Br. 7–8.  But that that statement is demonstrably false.  Because the April 2, 2012 performance evaluation came almost a year *after* Brown filed her first lawsuit in this Court on April 29, 2011, and almost two years *before* Brown filed her next EEOC charge on March 25, 2014, this chronology does not give rise to an inference of retaliation.  *See Murray*, 528 F. Supp. 2d at 275.

Third, Brown alleges that on June 25, 2014, she received notice that she was required to appear at the Office of Administrative Trials and Hearings ("OATH") for disciplinary action.  SAC ¶ 16.  As the Court noted in its October 23 Opinion, this event does not qualify as a materially adverse action.  An adverse employment action is a "materially adverse change in the terms and conditions of employment."  *Sanders v. N.Y. City Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004) (citation and internal quotation marks omitted).  "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities."  *Id.* (citation and internal quotation marks omitted).  The OATH summons did not, in itself, "trigger negative consequences to the conditions of employment," *Taylor v. N.Y. City Dep't of Educ.*, No. 11 Civ. 3582 (JG), 2012 WL 5989874, at *7 (E.D.N.Y. Nov. 30, 2012) (citation omitted), and therefore does not qualify as a materially adverse employment action.  Moreover, more than two months passed between the time Brown filed a lawsuit on April 15, 2014 and the time she received the OATH summons on June 25, 2014.  Even if the OATH

5

summons qualified as a materially adverse action, the inference of a causal connection based solely on this temporal proximity would be tenuous at best.

Fourth, Brown alleges that she interviewed for a promotion on July 3, 2014 but was not awarded the position. SAC ¶ 18. Brown does not specify when she learned the results of her interview. Even assuming an extremely prompt turnaround time, Brown was denied the promotion almost three months after she filed a lawsuit on April 15, 2014. These events cannot be characterized as "very close" in time. *Clark Cnty. Sch. Dist.*, 532 U.S. at 273. Brown also alleges that less qualified candidates were promoted. SAC ¶ 18. But that claim is pled in wholly conclusory fashion. And any inference that the denial of the promotion was due to retaliation is defeated by Brown's concessions that the position she interviewed for was a poor fit, Dkt. 25, at 2 ("The distance from my home is 3 hours one way by public transportation."), and that she was permitted to put her name back on the list for the next promotional opportunity, SAC ¶ 18.

Fifth and finally, Brown alleges that, at the OATH hearing on September 9, 2014, she was suspended for 10 days without pay. SAC ¶ 20. This action, although clearly materially adverse, occurred nearly five months after Brown initiated this case. Absent any other allegations that support an inference of retaliation, the temporal proximity between the protected activity and the adverse action is too attenuated to establish a causal link. *See, e.g.*, *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (summary order) (adverse action four months after protected activity is insufficient to establish causal connection); *Williams v. City of New York*, No. 11 Civ. 9679 (CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012) ("The passage of even two or three months is sufficient to negate any inference of causation when no other basis to infer retaliation is alleged."). This conclusion is reinforced by the apparent non-discriminatory reason for the adverse action, to wit, that Brown had refused to

complete tasks her supervisor assigned to her. *See* SAC ¶ 16. Even if "five months might be enough to establish a prima facie case, temporal proximity alone is not enough to establish pretext in this Circuit." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014).

Counsel blames the dismissal of Brown's previous complaint on her lack of "legal acumen." Pl. Br. 5. That is wrong. Brown capably presented the relevant facts; those facts simply do not state a colorable claim under Title VII. Granting leave to amend would be futile because "the proposed amendment would be subject to 'immediate dismissal' for failure to state a claim." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 298 (S.D.N.Y. 2000) (quoting *Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999)); *see also, e.g.*, *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (Granting leave to amend is "futile" if a revised claim still "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."). As such, the Court's decision did not—and indeed, does not—create "manifest injustice." *Kolel*, 729 F.3d at 104.

The Court therefore denies Brown's motion for reconsideration and for leave to file a SAC. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 35, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: November 11, 2014
New York, New York

7